14-3727 Gregory Lutz, et al. v. Huntington Bancshares, Inc., et al. For argument, 15 minutes per side. Mr. Lingle for the appellate. Good morning, Your Honors. I have reserved five minutes for rebuttal time. You may. May it please the Court. The issue presented by this case is whether defendants have met their burden of proving that the administrative exemption to the Fair Labor Standards Act applies to their underwriters. A couple of preliminary notes on that test. It is the defendant's burden, and exemptions to the Fair Labor Standards Act are narrowly construed. The Fair Labor Standards Act is a remedial statute which provides for overtime when employees work over 40 hours in a week. To meet their burden, defendants must prove that the three elements of the exemption are met. Only two are at issue on appeal today. First, Huntington must prove that the duties test is met. This test requires that Huntington prove that its underwriter's primary duty is the performance of office or non-manual work that is directly related to the management of Huntington or its general business operations. And second, Huntington must show that performance of the primary duty includes the exercise of discretion and independent judgment with respect to matters of significance. The defendants haven't met their burden on either of those elements, and it was error for the district court to find otherwise. So you deny that they even exercise discretion and independent judgment? We do, Your Honor. Turning first to the duties tests. Why do they even have, if I take you strictly as you're saying it, why do they even have underwriters? A computer program would do what you say the underwriter does. You just feed the data in, the guidelines would spit out the answer. There are some tasks which could be done by a computer, but there are other tasks which do require a person to do them. When you put in the information, there is a recommended outcome, but the underwriter still needs to look through the documentation of the application, make sure all the information that's required is in there. They verify the information. All of these procedures are in the manual. So the test doesn't boil down to... So you're saying the only thing they're doing is verifying the information? So somebody else collects the information. Right, and if they put it in a computer and it spilled out the answer, that would be the end of the case, right? There are some aspects of this job, which I said you can... Some of the aspects are they can go beyond the guidelines. Well, if you're... That's called discretion. It's not discretion when the guidelines are so specific that it controls the outcome of virtually any possible situation. Let me get back to my computer, but I suspect you're oversimplifying that, aren't you? The record has much of the policy, the credit policy, and the product profiles. These are very detailed, comprehensive guidelines which govern how the underwriters perform their job. This court has, in its previous decisions, has discussed the level of discretion which is required to be exempt. We can discuss some of those cases. So, for example... Well, now you're talking about the level of discretion. I thought you initially said there's no discretion. The outcome for a particular application is dictated by the policies. The underwriter collects the information, the information is collected, applies a policy, and the outcome is a result of applying the policy. Well, there is no discretion. I don't believe that there is discretion. What I'm talking about is even if you think that there is some discretion in the way that an underwriter were to perform this job, it's not outside, it's not to the level which is required in order to be exempt. What is that level? So, for example, this court in Schaeffer discuss regulations, policies, and procedures meant to create conformity. That's exactly what's going on here. To create conformity, show the lack of discretion. And that's true even if there's some leeway, such as a range or tolerance above or below a certain standard. That's from this court's decision in Schaeffer. So even if there is a tolerance above or below a certain standard, even if that exists and you think it exists here, that's still not enough to be discretion independent judgment under the regulations. Similarly, in Ale. I guess I don't understand that that's a level. If you have discretion above or below, that's a level that isn't enough? That's what this court has said. That it's not enough even if there's some leeway, such as a range or tolerance above or below a certain standard. But in this case, there isn't, as I read the material, it doesn't say you can deviate by $50 or 50 FICA points or some specific number. Am I wrong about that? So there is a specific, I think what you're discussing would be the exceptions that were allowed under the policy. Right, which they are allowed, as I read it, both to make exceptions that are more lenient or to put conditions which would be more stringent, right? And I think those are two different things. So an exception is within the policy. There's an exception policy in the policy which says here are the conditions under which you can do this. And in order to do it, you have to put in a code which justifies under the policy the reason that you're making that exception. So they're exercising discretion under the policies. I don't believe so because even the policy dictates when you can use that exception and it says the reasons that you have to have in order to do it. So in criminal cases in federal court, you have guidelines and the judges can depart from the guidelines under certain circumstances. Is that not discretionary because the guidelines say when you can depart from them? I don't practice criminal law. You're lucky. I hate to opine on the level of discretion of judges. All right, well, I think we've beaten that one a good bit. Let me take you to the DOL regulations, which are themselves somewhat discretionary, I guess. But 541.203A talks about employees in the financial services industry generally meet the duties requirement, which I take it that's the other portion that we've been talking about, the discretion requirement. And then the duties requirement is duties related to the general management and business operations. Am I right? Am I on the right segment here? Yes. If their duties include work such as collecting and analyzing information regarding income assets, that sounds pretty close, and determining which financial products best meet the customer's needs, and there's testimony both ways about whether they want the customer or the bank. And then it has this line, an employee whose primary duty is selling financial products does not qualify, which makes a sort of negative implication that if you're doing these other things but not selling, these underwriters aren't selling products, are they, in any reasonable sense? No, I don't believe they're selling the products, but they're also not doing the job duties that are listed before that, with the exception possibly of analyzing information. But it also goes on to say determining which financial products best meet the customer's needs and financial circumstances. In general, when the underwriter receives a file, the product has already been selected that the applicant is applying for. Advising the customer regarding the advantages and disadvantages of different financial products. It's undisputed that the underwriters here do not talk to the customers themselves. Indirectly, although as I understood it, in effect, if they reject what's been proffered, they can say, well, something else, they might be able to go over and get this subprime or altprime product instead. They can make a counteroffer, but that would be for, again, under the guidelines of the product that they would actually then meet. But the underwriter is not meeting with these customers and identifying which product and making recommendations as to the product that best suits their needs. This regulation is also conjunctive. It says, and marketing, servicing, or promoting the employer's financial products. Although these are all such as, that is, it certainly doesn't say you've got to be doing all of these things, as I read it. If their duties include work such as, and then there are three, four, five of them. That is true, but I think that the regulation here is meant to cover a person who meets with a customer, analyzes their financial information, makes recommendations about the products that would help meet their needs. What you just struck in about meet with the customer, that doesn't come in like at the top of this list. At best, it starts maybe with this advising the customer, right? Right, advising the customer regarding, this is a person though, I mean, when you read this in context, this is a person who is meeting with the customers and helping them make those financial decisions. That is what this regulation is discussing. At this point, I see my time is almost up anyway, and I reserve rebuttal. Anything else? All right, you'll have your time for rebuttal. Thank you. Good morning, Your Honors. If it may please the Court, my name is Tracy Piles, and I represent the appellees in this matter, and with me at the Council's table is Bill Post from the Huntington National Bank. Now, Huntington respectfully urges this Court to affirm the District Court's decision granting summary judgment to Huntington National Bank in finding that the home lending underwriters were properly classified as administratively exempt employees. Now, this morning, I'm going to focus on two distinct findings in the District Court's ruling analyzing the administrative exemption, and you will find that they mirror what my colleague was setting forth in his initial presentation to the Court. Specifically, I'm going to talk about the District Court's proper determination that home lending underwriters' primary duty is the performance of work directly related to Huntington's general business operations, and second, I'm going to talk about the District Court's proper determination that Huntington's home lending underwriters' primary duty includes the exercise of discretion and independent judgment with respect to matters of significance. Now, the first duties finding that I mentioned, that really goes to looking at what do these home lending underwriters do, and why do they do it? And for this prong, the Court looks at whether it directly relates to the management or general business operations of Huntington National Bank. Now, the record upon which the District Court based its findings is undisputed when it comes to the primary duties of the home lending underwriters. We deposed a number of the underwriters, and they all agreed as to the characteristics of their primary duties, and primarily, they're responsible for evaluating the creditworthiness of the customer submitting the loan applications and making decisions about whether the bank will take on the risk of the loan. So those are undisputed. And then the next step is fitting those undisputed facts into the exemption analysis, which is a question of law, and again, we believe that the District Court got it exactly right. Now, the regulations, and in particular, 29 CFR 541.201A, it gives us a bit of context so we can decide what is the performance of work directly related to Huntington's general business operations. And the regulations go on to tell us that the primary duties must be related to assisting with the running or servicing of the business. And then it goes on to say, as distinguished from working on a manufacturing production line or selling a product in a retail or service establishment. Counsel, I think this, at least for me, this is the key point, the discretion I don't have as much doubt about, that so the 201A that you're reading says, okay, you know, guys that are making widgets or gals that are out selling, that's not general management. Then 201B gives a bunch of examples, work directly related includes, but is not limited to, but it does give context to tax, finance, accounting, legal, etc. But all of those seem to kind of sit some distance above a general operation. And my question is, these underwriters, they're clearly not, you know, on an assembly line, but they are the main line of the business in the sense that banks make loans. And so that's what I'm struggling with, that if you go through all of the things in 201B, they don't really fit directly into any of those. I mean, they smell a little bit like some of them, but really all of those are things that you might say sit above several functions. And so that's my problem, that they're not an assembly line, but nevertheless they don't sit this far above it. Are there cases that would help us on this? Sure. And Your Honor makes a great point, and that's part of what makes it difficult when you're examining what is generally and commonly referred to as the administrative production dichotomy, and how does that fit here. And it is difficult to apply that dichotomy to the 21st century employment, particularly in the services industry, which is what we have here. So here we have underwriters who are involved in the loan process. They're not selling the loan, but they are involved in the loan process. So I think this gets us into what I would refer to as Renfro I decision from the Sixth Circuit, where it talks about what is a production employee, and the Sixth Circuit has a specific test about what that means. And in the circuit, the job of a production employee is to generate or produce the very product or service that the employer's business offers to the public. When employees engage in work that is ancillary to an employer's principal production activities, those employees are administrative. So in the Renfro decision, the employer was AEP, and the at-issue job was a planner. And the planner was responsible for creating and maintaining plans so that the equipment would be maintained and could deliver the electrical product to the general public. The court found that the planner, although he was involved in the process of providing the electricity to the general public, his job duties were ancillary to the product, to the service that AEP was providing. So sure, he was involved in the process, but he did not produce the product or service that the business offers. So here, who are the people that produce this product? The salesmen and the typists, or who? Sure. So in Huntington's structure, there is a mortgage loan officer, the loan originator, and that's the individual who initiates the process. They meet with the customer, they come up with the best solution for the customer, and they're the ones who are traditionally selling the product to the customer. They would come under FLSA. They are, yes. At least they don't come under this exemption. Exactly, yes, that's right. And they are classified as non-exempt. That's correct. So is it sort of like front office versus back office, you think of that, in some factory circumstances or some service organizations? Sure, sure. And I think, again, and that's the interesting thing about this dichotomy, as workplaces evolve over the course of time, it becomes difficult. And in 2004, when the Department of Labor revised the exemptions, it particularly revised the exemption that dealt with production employees. Prior to 2004, there weren't really any caps on what it meant to be a production employee. The regulation basically said, and also, you can be an administrative employee or you can produce and sell. But they didn't tell us what that meant. In 2004, the Department of Labor revised those regulations and put some caps around what does it mean to be a production employee and made it clear that a production employee should be looked at in the traditional sense of the word, working on a manufacturing line. And then that gets us to the language I mentioned from 541.201A, where it mentions there's the administrative work distinguished from working on a manufacturing production line or selling a product in a retailer service establishment. That's the language that was added in 2004. And what about the Second Circuit case? The Davis case? The Davis case is not applicable here, and I think there are several reasons why it's not applicable, but I've targeted five to talk with you about today, and I can roll through those fairly quickly. First of all, Davis was decided based upon the regulations prior to 2004. So the Davis case is looking at the regulations as they stood in 2003, before the Department of Labor kind of put these confines around what does it mean to be a production employee. So the Davis court didn't have that guidance from the Department of Labor that they should be looking at production in the traditional sense of the word. In addition to using the outdated regulation in its decision, and that's based upon the timing of when the complaint was brought, the Davis case also was then using case law that was interpreting the regulations prior to 2004. And there were many decisions that Davis relied on that were later revisited by the same courts who had issued those decisions and found those decisions were no longer applicable because the 2004 regulations essentially gutted the reasoning. Can you give me one of those cases? I can. So there was a Third Circuit case. It was the Martin v. Cooper Electric Supply Company case, and it was decided by the Third Circuit in 1991. So then when Davis was decided, it largely relied upon the Martin decision. And then later in 2010, the Third Circuit went back and revisited Martin and determined that the Department of Labor's 2004 regulations rendered Martin inapplicable. And that was in Smith v. Johnson & Johnson in 2010. So I'd say that's the second reason why Davis is not applicable here. The third reason is when Davis was decided, again, it's looking at these older regulations and cases, so it's ignoring what is being developed in cases that are analyzing the 2004 regulations and determining that this administrative production to economy doesn't really make sense in today's workplace. But you don't see any of those decisions, even some of which come from the Sixth Circuit in the Davis decision because, again, it's focused on pre-2004 regulations. And fourth, Davis set up a proposition that does not exist in the circuit. So in Davis, the court made a distinction between the kind of work an employer needs simply because it is operating any business and the kind of work an employer needs based upon the industry the employer is in. So here in Davis, the court determined because Chase employed underwriters because of its industry, financial services, that was one reason why those underwriters were found to be production employees. That's not the case here in the Sixth Circuit. For instance, there is the Foster v. Nationwide Mutual Insurance Company case out of the Sixth Circuit that determined special investigators were administratively exempt employees. At this point, you think there's just a distinction between the law and the two circuits? I do on that point. That's correct, yes. And then my fifth point. But they make that distinction in the context of production. They do. That's correct. I'm not sure that they would have come to the same conclusion if you're dealing with investigators. Well, you're right. They did make the distinction in the context of production. But when they were looking at what is a production employee, at least according to the Davis court, their inclination was that if you're an employee, employ because of the nature of your employer's industry and not because your employer is in business. So HR is a function that an employer needs regardless of what business they're running. Underwriting is a business that Chase needed because they were in the financial services industry. They found that to be a deciding factor as to why that would be a production employee. They found it to be a factor. They did. There was a lot more that went into the decisions. I think other aspects that come out far more clearly as being far more important, I think, to the court. I think that's right. I think it was one piece of their decision that wouldn't comport with the law in the Sixth Circuit. But that's absolutely right. There were other pieces of the decision that the Second Circuit based its final decision on. And getting to that point, the Second Circuit is clear that the job duties that were examined in Davis were the job of underwriter as it was performed at Chase. So they weren't looking at underwriters generally. They're looking at what do the Chase underwriters do. And the Second Circuit does provide us some guidance on what the underwriters were doing. But it doesn't get us down to the nitty-gritty of what were these folks really doing. They give us a flavor of what they were doing, but it's hard to read the Second Circuit decision and really understand how they performed their job duties. And I looked at the record in the Second Circuit to see what I could determine, and I don't find a lot of details. Now, George Miller, one of our underwriters, deposed in the Huntington case. After he worked at Huntington, he then left and worked at Chase, and he worked in two different underwriting positions in the mortgage industry. I look at what George Miller did when he worked at Chase, and it was far different than what he did at Huntington. He did not have the ability to approve or deny loans, which is absolutely what the home lending underwriters do at Huntington. And when he was at Chase, he actually worked with the customers to determine what was the best loan product for them, also far different than what he did at Huntington. Now, again, I don't know exactly what the Second Circuit had in front of it, but I do know the Second Circuit was clear. Their decision is based upon the Chase underwriter duties. And I submit here that the Huntington underwriter duties appear to be far different than what the Chase underwriter duties were. So moving on from the administrative production dichotomy, unless Your Honors have any further questions about it. The District Court did look at the dichotomy and found that it was not applicable here in this case, and Huntington absolutely agrees with that. The Court then went on to look at some of the other examples that the regulations provide, which is what Your Honor had mentioned in subsection B, and found that while there is no perfect fit, there were some other jobs and different responsibilities mentioned in the regulation that did have a flavor of what the Huntington underwriters are doing. For instance, there is the quality control aspect, which I think is a very close fit to what these folks are doing. Huntington has a separate quality control department. I'm not saying that. But they are rendering some kind of quality control over the loans that are going to be approved. And I think it's also very helpful to look at the claims adjuster job, which is in 541.203A. And I think claims adjusters are essentially doing the same thing that a home lending underwriter is doing, but a claims adjuster is doing it on the back end of things, whereas the home lending underwriter is doing it on the front end of things. An adjuster is looking at an application for benefits under a policy, looking at the policy and guidelines as to whether or not they should pay out the benefits that are being applied for. Home lending underwriters are doing it at the front end of things. They're trying to decide whether or not the bank can take on the risk of the loan. So I think when the district court looked further at the jobs, it helped to solidify exactly why the district court came to the decision that it came to. And then quickly, well, my time is about up. Any further questions? No, thank you. Thank you, Your Honors. Just a few follow-up points here. So we agree that what you need to do is take a look at what the underwriters do and why they do it. And that's consistent with what happened in the Davis case in the Second Circuit. Davis took a look at what the underwriters did for Chase and found that what they were doing, they were producing the loans in the financial industry, and that was the product offered by— In Davis, the underwriters couldn't depart from the regulations, which is of distinction at least here. I think the record is different than that in the Davis case. I'll be at your level of distinction, and there's a distinction. Right, so that would go to the discretion aspect. The Davis court didn't actually reach the discretion element, finding that the underwriters themselves did not perform administrative work, that they were actually production employees. Based on the function that they performed in the financial industry for a bank, which produces loans for its customers. That's what the underwriters do. No loan can be issued from Huntington unless an underwriter performs their task on the file. That's also consistent with this court's decision— Would that be similar, though, to contracts? No contract goes out unless legal approves it. It would be— They're not selling the contract, but their approval is necessary, but yet everybody would seem to think that legal is not production employees. And legal is actually, as Your Honor put it, one of the overarching higher-level departments that is actually specifically listed in the regulation. But, I mean, that's— It's not— I mean, it's not mandatory that way, but the fact that legal has an approving function— But I would argue that a contract is not the good that the bank is producing, right? What is being produced is a loan, and people are paying interest on the loan. That is the good, and that's what underwriters produce. And that's what Davis found. I would also suggest that the Davis outcome— The Foster decision is entirely consistent with Davis, although Foster itself was considering whether or not special investigators were exempt. There's a line in Foster specifically on— relating to whether or not those employees write or sell insurance policies, and suggesting that if they did that function, that they would be production employees and therefore non-exempt. Now, the Sixth Circuit used the word right, but if you look at the district court decision from which the Sixth Circuit was— actually uses the word underwrite. So why would— What's wrong with their distinction between the loan officer who sits at the bank, deals with the customer, decides which— you know, tries—sells it, and what's wrong with their argument that that's the production officer and the underwriter is the support staff? Sorry, I didn't mean to cut you off. No, go ahead. I would argue that both of those positions are in the production process. It's not as though you have one employee who is necessarily responsible for production. There can be multiple employees. This could be considered the modern-day assembly line in the financial industry, right? You have a person who—the loan originator person who is collecting the information, puts it into a file, who passes it along to the underwriter who performs their task, which then ships it out to processing to get the loan out to the customer. There's a process. I don't think that those are mutually exclusive, that one has to be exempt and one is not. I would say that both of those functions would be non-exempt positions. They are producing that good. So if Henry Ford says, I want this car produced, he's in the production, not in the general business? No, he's managing, right? Oh. So that's a higher level— I want—this is a car I want produced. I would say that's different. If you're making the decisions about which products is going to be offered— Well, this guy is saying this is a loan I will approve or I won't approve or this is a loan I will modify. But that's based on the product that already exists. The underwriter isn't deciding this is the product that the bank will offer. The product isn't—the product is the loan, is it? So, yes, the products are the loan. It's going to be over the money, so he's in the process of determining the loan. But I would say that there is another group that decides, okay, here are the various product profiles that we will have out there that customers can purchase, right? So I would say Henry Ford in that situation would be saying, well, here are the various kinds of cars that could— I'm just trying to make the point that when you get into this production thing, it gets in a pretty gray area. And I would just say that I think the Court was right in observing that there are limited job functions that are qualifying under the exemption, under the regs. Thank you, counsel. Thank you. The case will be submitted. The clerk may call the next case.